IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTISNBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. 3:21-cr-0049-2 |
| | ) | |
| DIANA TOEBBE, | ) | |
| Defendant | ) | |

**DIANA TOEBBE'S MOTION TO VACATE, CORRECT,
OR SET ASIDE SENTENCE UNDER 28 U.S.C. § 2255**

Diana Toebbe petitions this Court to vacate, correct, or set aside her sentence under 28 U.S.C. § 2255. Her trial counsel's performance was deficient when advising her about the terms and consequences of her plea. But for the deficient performance of counsel, Toebbe would have exercised her right to go to trial. Because Toebbe was denied her Sixth Amendment Right to the effective assistance of counsel this Court should vacate her conviction and sentence.

**Procedural and Factual Background**

Jonathan and Diana Toebbe were indicted on one count of conspiracy to communicate restricted data and two substantive counts of communicating restricted data, in violation of 42 U.S.C. § 2274(a). The indictment alleged that Jonathan Toebbe, who had a high-level security clearance and worked for the Navy on issues relating to nuclear submarines, stole a number of documents classified at the "confidential" level. He sent a sample of the restricted documents to a foreign country, proposing to send more in exchange for cryptocurrency. That country, however, alerted U.S. authorities. The FBI, together with other law enforcement and intelligence agencies, began an undercover operation targeting Jonathan Toebbe.

As part of this undercover operation, the government transferred to the Toebbes cryptocurrency in exchange for stolen confidential information. Jonathan Toebbe communicated with the undercover agents and arranged for "dead drops" of the information. The indictment alleges that Diana Toebbe "provided cover and acted as a lookout" for Jonathan Toebbe on June 26, 2021, July 31, 2021, and October 9, 2021. (ECF 37 ¶¶ 17, 29, 34, 41.)

After Toebbe's arrest she was represented by various counsel but for the purposes of this § 2255 proceeding and for all material and relevant facts and times Toebbe was represented by Barry P. Beck of 308 West Burke Street, Martinsburg, West Virginia, and by Jessica Carmichael of 108 N. Alfred Street, 1ˢᵗ flr., Alexandria, Virginia.  Because Toebbe was incarcerated much closer to attorney Beck and because the subject matter was highly confidential and not suitable for phone consultations, Beck had much more involvement in meeting with and advising Toebbe than Carmichael.

In the early winter of 2022, the government offered Diana Toebbe a plea agreement that included a sentencing range of five to seven years. She rejected this agreement in favor of trial. The government made a new plea offer for an agreed-upon sentence of five years. She rejected this offer as well. The government returned with a third offer for a binding plea pursuant to Fed. R. Crim. P. 11(c)(1)(C), whereby she would enter a guilty plea to the conspiracy charge in exchange for an agreed-upon sentence of 36 months. (ECF 98.) While Toebbe accepted this offer, this Court rejected the plea on the grounds that the sentence was insufficient to protect the public interest. Toebbe withdrew her plea.

After some discussion between trial counsel and the government, they determined that this Court was unlikely to accept a fixed term of years plea. So on September 19, 2022, the government offered Toebbe a new agreement which instead bound the Court to sentence Toebbe

to the low end of the advisory guidelines range. Trial counsel explained to Toebbe that her sentence was very likely to be nine years, but it could be as high as twelve years because it was not likely, but possible, that this Court would reject the three-point departure under USSG § 5K1.1.  Toebbe was very unhappy with this agreement as she has already rejected plea offers of five and seven years. After consideration and consultation with counsel Toebbe reluctantly accepted this offer because it was likely to be a nine year sentence and that avoided the risk of a twenty year sentence if she went to trial. To be clear, Toebbe understood that this nine year plea had a chance of being a twelve year plea because she knew that this Court was not bound to the nine years. But because Toebbe had already provided the assistance and was told that it was extremely rare that Courts reject government  5k1.1 requests, Toebbe accepted the plea because she understood it was very unlikely to be longer than nine years.  Toebbe had no knowledge that there was a possibility that this Court could sentence her to more than twelve years.  Toebbe was unaware at the time she accepted her plea that her sentence could be longer than twelve years because of obstruction of justice or failure to accept responsibility.

The plea agreement included a stipulation that the base offense level was 37 under USSG § 2M3.1(a)(2), but also stated that the Court was not bound by the stipulation as to base offense level. (ECF 107 ¶ 4.) The plea agreement also included a three-point departure under USSG § 5K1.1 because Toebbe had already provided the government with substantial assistance. With respect to acceptance of responsibility, the plea agreement also included a representation that the government would move for an additional point off her base offense level.

When Toebbe's counsel reviewed this agreement with her, they explained that her sentence would be capped at nine years and that the plea was binding. Her lawyers told her that the offense level of 37 would be reduced by three for acceptance of responsibility. They never

told her that she might not receive a reduction for acceptance of responsibility. Her lawyers also told her to expect her offense level would be reduced by an additional three levels for cooperation.

Toebbe's lawyers did not explain the appeal waiver to her. She had discussed the appeal waiver in the rejected plea with a previous lawyer, who told her that an appeal would be unnecessary because she would be sentenced to 36 months. Since the language of the two waivers was identical, Toebbe thought that any appeal would still be unnecessary. Her lawyers did not tell her otherwise.

When Toebbe entered her guilty plea, the government summarized the agreement for the magistrate judge with respect to both the motions under Section 5K1.1 and acceptance of responsibility. The government stated that Toebbe had already successfully cooperated with the government's investigation. (ECF 161 at 12.) The government also stated that the probation office, which conducted a presentence investigation after the first withdrawn guilty plea, had already found that she had accepted responsibility under Section 3E1.1, so the government would be moving for an additional point off her offense level. (ECF 161 at14.) Although the magistrate judge asked if Toebbe understood that the stipulation as to "relevant conduct" was not binding, the discussion of the guidelines during the colloquy reflected a base offense level of 37 reduced by six levels. (ECF 161 at 12, 14, 18.)

At the sentencing hearing, this Court increased Toebbe's offense level above what the plea agreement and plea colloquy anticipated. First, this Court found that Toebbe had obstructed justice by attempting to send two letters through the jail's laundry service to Jonathan Toebbe on December 29, 2021, and January 4, 2022—months before both plea agreements—urging him to plead guilty and exonerate her. Second, this Court denied Toebbe any acceptance of

responsibility reduction because the Court did not find that Toebbe clearly accepted responsibility, despite the fact that she had pled guilty twice. Third, this Court denied the government's motion for a reduction under Section 5K1.1, finding that Toebbe did nothing remarkable and her cooperation was not "substantial."

This Court found Toebbe's final offense level to be 39, with an advisory sentencing range of 262 to 327 months, and imposed a low-end sentence of 262 months under the binding provision of the plea agreement.

Toebbe thus received no benefit of her bargain. She received a sentence in the range that she would have received if she had gone to trial. She would have exercised her right to trial if she had known that such a sentence was possible. But her lawyers never told her that she could receive a 22-year sentence, and thus she did not understand all the consequences of guilty plea. Moreover, she did not understand that she would not be able to appeal her sentence. While she did attempt to appeal her sentence, the Fourth Circuit denied and dismissed her appeal on October 25, 2023, enforcing the appeal waiver. She now files this timely petition under 28 U.S.C. § 2255.

## Argument

Toebbe's counsel failed to advise her of the full range of consequences of her guilty plea, never telling her that her sentence could exceed 12 years. They never told her that her sentence could be the same after pleading guilty as after going to trial. This failure constituted deficient performance, and Toebbe was prejudiced because she would have rejected this plea agreement and either negotiated a better agreement binding the Court to a 12 year limit, or she would have gone to trial.

To prevail on a claim of ineffective assistance of counsel, Toebbe must establish that her counsel's performance fell "below an objective standard of reasonableness" in light of "prevailing professional norms." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). In addition, she must show that the deficient performance prejudiced her. *See Id.* at 687-88 (1984). She must demonstrate a "reasonable probability" that but for her lawyers' deficient performance she would have either negotiated a plea agreement that would have resulted in a lower sentence, or that she would have rejected the plea agreement and proceeded to trial. *United States v. Akinsade*, 686 F.3d 248, 256 (4th Cir. 2012).

1. **Toebbe's counsel's performance fell below an objective standard of reasonableness.**

Negotiating a plea bargain "is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010). "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler v. Cooper*, 566 U.S. 156, 168 (2012).

Counsel's duty during plea negotiations "extends to advising the defendant about the consequences of pleading guilty beyond the criminal conviction itself." *United States v. Aguiar*, 894 F.3d 351, 357 (D.C. Cir. 2018). *See also Padilla*, 559 U.S. at 366. Constitutionally adequate counsel determines whether there are "clear" and "easily determined" consequences of the proposed plea agreement. *Aguiar*, 894 F.3d at 358 (quoting *Padilla*, 559 U.S. at 368-69). Counsel must advise a client on the likely ramifications of a plea offer. Competent counsel must advise the client of likely and severe consequences of accepting or rejecting a plea, including "the worst case scenario" in order for them to make an informed decision about pleading guilty or proceeding to trial. *Id.* at 361.

When a lawyer misadvises a client about the Sentencing Guidelines, the lawyer provides ineffective assistance under the first prong of *Strickland*. *United States v. Gaviria*, 116 F.3d 1988, 1512 (D.C. Cir. 1997). Basic professional norms require counsel to be familiar with and properly advise a client about the implications of the Guidelines on a defendant's guilty plea. *Id.* Representation is deficient when defense counsel "offers a plainly incorrect estimate of the likely sentence" when the lawyer should have been aware of the applicable law. *Aguiar*, 894 F.3d at 357. (quoting *United States v. Booze*, 293 F.3d 516, 518 (D.C. Cir. 2002)).

Here, Toebbe's counsel failed to advise her of potential severe consequences of pleading guilty and never discussed the worst-case scenario with her. Instead, they told her, incorrectly, that her sentence would be likely be nine years and capped at twelve years. Her counsel never advised her that her offense level might not be reduced under Section 3C1.1 and that the Court might deny her acceptance of responsibility. Her counsel's performance thus fell below prevailing standards of professional norms. They misinformed her about the implications and application of certain provisions of the Sentencing Guidelines. Indeed, even when her counsel discussed an unexpected increase in her offense level for obstruction of justice, her counsel never discussed the implications of that enhancement of the two reductions that the plea agreement contemplated.

Counsel provided a plainly incorrect estimate of Toebbe's likely sentence—telling her it would be less than half of what the Court decided. And this incorrect estimate was based on a deficient understanding of how Section 3C1.1 and 5K1.1 of the Guidelines work.

2. **Counsels' deficient performance prejudiced Toebbe**.

When a defendant has pled guilty, the prejudice aspect of the *Strickland* test "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea

process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Prejudice exists if there is a reasonable probability that the outcome would be different. *See Glover v. United States*, 531 U.S. 198, 204 (2001); *Byrd v. Skipper*, 940 F.3d 248, 258 (6th Cir. 2019); *Aguiar*, 894 F.3d at 359. A reasonable probability of a different outcome is a lower standard than a preponderance of the evidence. *See Rangel*, 781 F.3d at 742 ("a defendant is not required to establish that counsel's deficient conduct more likely than not altered the outcome of the case") (internal quotation omitted). Prejudice exists when there is a reasonable probability that the defendant would not have pleaded guilty but would have proceeded to trial. *See Hill*, 474 U.S. at 59.

If Toebbe's counsel had adequately advised her of the risks of entering her guilty plea, she would have gone to trial. She had already rejected two plea offers that would have led to sentences of five or seven years. Indeed, her sentence was in the same range as if she had gone to trial; she received no benefit from pleading guilty. And she could not even appeal the result because she had unknowingly waived the right to challenge her sentence in the Court of Appeals.

Toebbe's expectation of what sentence she would have received based on counsel's deficient performance was reasonable, as demonstrated through the arguments that the prosecution made at sentencing. Indeed, the government argued for the court to impose a 36 month sentence even after the Court had rejected that binding plea agreement. (11/9/22 Tr. at 68.) More specifically, the government argued that the two letters that gave rise to the obstruction enhancement had no effect on the investigation and that, in the government's view, her cooperation was substantial. (11/9/22 Tr. at 38-39.)

The government also highlighted that the Court was holding certain facts against Toebbe that were demonstrably false. For example, the Court assumed that Toebbe had access to additional cryptocurrency and that she was more culpable than her husband, who was the person

who actually stole the confidential documents and arranged to sell them to a foreign government. (*Id.* at 62-63, 65-67.)

Undisputed facts thus establish that Toebbe's understanding and assumptions about the benefits of pleading guilty were reasonable. But her counsel's job was to ensure that she knew about all the risks as well. And her counsel failed to educate her about those risks, although prevailing professional norms required them to both know about the risks and worst-case scenarios and tell her about them so she could make a fully informed decision about whether the go to trial or plead guilty. If Toebbe had been adequately informed of the risks, she would have proceeded to trial.

Finally, trial counsel's performance was also deficient because they never advised Toebbe after the entry of her plea, and prior to sentencing, that she could move to withdraw her plea when they discovered that there was a possibility that Toebbe's acceptance of responsibility and obstruction of justice was in doubt. Had trial counsel informed Toebbe about the possibility of a higher sentence than they previously advised, and that she could move to withdraw her plea, Toebbe would have done so.  Toebbe was prejudiced because this Court would have granted her motion to withdraw her plea under these circumstances

In addition to violating her Sixth Amendment right to the effective assistance of counsel, the consequence of Toebbe's counsels' deficient performance and this Court's failure to sufficiently inform Toebbe during the plea colloquy was an involuntary plea violating her Fifth Amendment rights.

> A district court's duty to ensure a knowing and voluntary plea arises from the Fifth Amendment's guarantee of due process and thus affords defendants a right distinct from the Sixth Amendment right to effective assistance of counsel. While we have recognized the inter-relationship between the two amendments in the context of guilty pleas, *see United States v. Smith*, 640 F.3d

580, 582 (4th Cir. 2011), we have never suggested that the sufficient protection of one right automatically corrects any constitutional deficiency of the other.

*United States v. Akinsade*, 686 F.3d 248, 255 (4th Cir. 2012). Toebbe pled guilty without having a full appreciation for the consequences, meaning that she did not knowingly and voluntarily give up her right to a jury trial.

### Request for Hearing

Toebbe requests a hearing under 28 U.S.C. § 2255(b), which states that the Court must hold a hearing unless ""[u]nless the motion and the files and records conclusively show that the prisoner is entitled to no relief."

Respectfully Submitted,

/s/ Meghan Skelton
Meghan Skelton
SkeltonLaw, LLC
P. O. Box 308
Cabin John, MD 20818
240-425-2280
meghan@skelton.law

/s/ Jonathan Sheldon
Jonathan P. Sheldon, VSB#66726
Sheldon & Flood, P.L.C.
10621 Jones Street, Suite 301-A
Fairfax, Virginia 22030
(703) 691-8410 (Phone)
(703) 991-7413 (Fax)
jsheldon@sfhdefense.com

*Counsel for Defendant*
*Admitted Pro Hac Vice*

*Local Responsible Counsel:*

/s/ Robert McCoid
Robert G. McCoid
West Virginia Bar #
McCoid Law Offices, P.L.L.C.
56-58 14th Street

Wheeling, WV 26003
304-242-2000
robert@mccoidlaw.com


CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of January, 2025, a true copy of the foregoing

Motion was electronically filed with the Clerk of the Court via the CM/ECF system, which will

send a Notice of Electronic Filing to all counsel of record.


*/s/ Robert McCoid*
Robert McCoid

## VERIFICATION TO

## PETITION FOR WRIT OF HABEAS CORPUS – 28 U.S.C. § 2255 MOTION

I, Diana Toebbe, being first duly sworn, do say:

1) I have read my federal petition for habeas corpus.

2) The facts stated therein are true to the best of my information and belief.

3) I declare under the penalty of perjury that the foregoing is true and correct.

Diana Toebbe